FILED

MAR 3 1 2008

CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 05-50292-ASW |
| Anthony S. Gould, | Chapter 13 |
| Debtor. | R.S. No. JWS-28 |

MEMORANDUM DECISION
ON MOTION FOR RELIEF FROM STAY BY IRS

Before the Court is the Motion by United States for Relief from Stay to Set Off Tax Refund (the "Motion") brought by the United States of America, for itself and on behalf of the Internal Revenue Service (collectively, the "IRS"). The IRS requests that the automatic stay of Bankruptcy Code § 362[1] be modified to permit it to offset pre-petition income tax liabilities owed by debtor Anthony S. Gould ("Debtor") against pre-petition income tax

---

[1] Unless otherwise provided, all references to code sections shall mean the Bankruptcy Code, codified in Title 11 of the United States Code, 11 U.S.C. § 101, et seq., including all amendments thereto.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

refunds[2] claimed by Debtor.

Debtor is represented by David A. Boone, Esq. and Leela V. Menon, Esq. of the Law Offices of David A. Boone. Special Assistant United States Attorneys John W. Strate and Rex K. Lee represent the IRS.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.

### FACTS

Debtor is a divorced father with two teenage dependent children.[3] He earns $3,100 per month working as a mechanic,[4] and his monthly expenses are $3,025.[5] He has very few assets and very few liabilities, other than tax liabilities and refunds. Debtor's only significant assets are a 1987 Jeep Cherokee, a state income tax refund in the amount of $3,217.00, and the federal income tax

---

[2] While the Motion primarily refers to "tax refunds," it also uses the term "tax overpayment." The Court notes that these terms, at least as used in some of the relevant caselaw, are not interchangeable. The use of the term "tax overpayment" has certain built-in analytical assumptions. For this reason, the Court shall use the more neutral term "tax refund."

[3] See Schedule I.

[4] Schedule I shows Debtor earns $3,100.00 per month working as a mechanic for Railway Distributing. This is his only source of income.

[5] See Schedule J.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

refinance in the amount of $6,852.00 currently at issue.[6]

Debtor's only significant debts are for income taxes.[7]  Prior to the filing of his bankruptcy case, Debtor failed to file federal tax returns for 1999 through 2004.  Pre-petition, Debtor owed roughly $28,000 to the Franchise Tax Board (the "FTB") and roughly $10,000 to the IRS for unpaid income taxes stretching back to 1991.

On January 20, 2005 (the "Petition Date"), Debtor filed his Voluntary Petition under Chapter 13 of the Bankruptcy Code, his Chapter 13 Plan (the "Original Plan") and his Schedules.

The IRS filed its initial proof of claim against Debtor on February 24, 2005, which included estimated income taxes due for 1999-2004.[8]  On March 2, 2005, the IRS filed an objection to confirmation of the Original Plan on the basis of Debtor's failure to file tax returns and the Original Plan's failure to provide full payment for the IRS's priority claim as required by Bankruptcy Code

---

[6]  See Amended Schedule A and Amended Schedule B.  Debtor's Amended Schedule B lists personal property with a current market value of only $15,964.00 -- of which, $11,047.00 is attributable to federal tax refunds and $3,217.00 is attributable to state tax refunds.

[7]  The only secured claim noted on Amended Schedule D is a tax lien by the FTB securing a claim of $28,122.57.  Amended Schedule E only lists priority claims by the FTB in the amount of $4.00 and by the IRS in the amount of $255.00 -- both for 2001 income taxes.  Schedule F shows six general unsecured claims totaling $32,822.62 -- the largest being a $27,078.55 debt to the FTB for 1993-1998 income taxes.  The Claims Register shows seven proofs of claim have been filed in this case -- five by the IRS, one by the FTB asserting a secured claim of $28,122.57, and one by Wells Fargo Bank asserting a general unsecured claim of $447.38.

[8]  United States' (IRS's) Supplemental Brief in Support of Motion for Relief from Stay, filed May 15, 2006, 3:15-18.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

3

§ 1322(a)(2).[9]

On May 26, 2005, Debtor filed Amended Schedules B, C, D and E (the "Amended Schedules"). On his Amended Schedule B, Debtor lists claims for federal income tax refunds for tax years 2002, 2003 and 2004 totaling $11,047.00.[10] On his Amended Schedule C, Debtor claimed the following exemptions:

| Property | Basis in CCP | Value |
|---|---|---|
| Household furniture, appliances, etc. | 703.140(b)(3) | $500.00 |
| Clothes, shoes and accessories | 703.140(b)(3) | $300.00 |
| Checking account | 703.140(b)(5) | $400.00 |
| 1987 Jeep Cherokee | 703.140(b)(2) | $500.00 |
| 2002, 2003, 2004 Fed Income Tax Refunds | 703.140(b)(5) | $6,852.00[11] |
| 2002, 2003, 2004 FTB Refunds | 703.140(b)(5) | $3,217.00 |

---

[9] On March 15, 2005, the Chapter 13 Trustee also filed an objection to the Original Plan on the basis of Debtor's failure to file his federal income tax returns for 2001-2004. This objection was withdrawn on September 13, 2005, after Debtor filed said tax returns.

[10] Debtor has subsequently acknowledged that this amount is incorrect. The tax refunds claimed as exempt by Debtor actually total $6,852. See Declaration of Debtor as to Facts Re Opposition to Internal Revenue Service's Motion for Relief from the Automatic Stay, filed January 18, 2006, at 2:14-17 ("I have exempted a total of $11,047.00 in tax refunds in the Amended Schedule C filed with the Court based upon an expected refund of $4,1950.00 [sic] for 2003. However, the Amended return filed for that year, 2003, indicates a liability due in the amount of $2,314.00.")

[11] Amended Schedule C incorrectly states the amount of this claimed exemption to be $11,047.00. See footnote 10 supra.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

4

No party, including the IRS, filed a timely objection to the exemptions claimed by Debtor in his Amended Schedule C.

At the time Debtor filed the Amended Schedules, Debtor had not yet filed his tax returns for the years 1999 through 2004.[12]   In June and July of 2005, Debtor filed these tax returns.   The balances indicated on these tax returns by Debtor are as follows:

| Year | Refund Claimed | Deficiency Owed |
|------|----------------|-----------------|
| 1999 | $2,226.00 | |
| 2000 | $2,291.00 | |
| 2001 | | $255.00 |
| 2002 | $2,414.00 | |
| 2003 | | $2,314.00 |
| 2004 | $4,438.00 | |
| | ========== | ========== |
| | $11,369.00[13] | $2,569.00 |

Declaration of Debtor as to Facts Re Opposition to Internal Revenue Service's Motion for Relief from the Automatic Stay ("Debtor's Decl."), filed January 18, 2006, 2:7-17.

After Debtor filed his Amended Schedules and his tax returns for 1999 through 2004, the IRS filed several subsequent amended Proofs of Claim.[14]

---

[12]   The IRS could have objected to the exemptions on the basis that Debtor had not filed these tax returns, but the IRS did not do so.

[13]   The 1999 and 2000 claims for refund are presumably barred by the statute of limitations to seek such refunds.   26 U.S.C. § 6511(a).   This issue was not addressed by the parties.   However, the Court notes this potential bar, as those amounts might otherwise impact the IRS's claim of setoff.

[14]   The IRS filed its first amended Proof of Claim on July 8, 2005, which was objected to by Debtor on August 19, 2005.   On August 26, 2005, the IRS filed its second amended Proof of Claim, asserting a priority claim of $307.51 and an unsecured claim of $9,664.93, for a total of $9,972.44 -- including penalties and interest.

1  Debtor filed his First Amended Chapter 13 Plan on May 26, 2005

2  (the "Amended Plan").  No objections were filed to the Amended

3  Plan.  The Amended Plan was confirmed on October 5, 2005.  The

4  Amended Plan provides that Debtor will pay the sum of $75 per month

5  to the Chapter 13 Trustee for a term of 37 months.  This results in

6  a distribution to general unsecured claims of approximately 2 cents

7  on the dollar.[15]

8  The IRS filed this Motion on October 25, 2005 seeking to

9  exercise certain alleged setoff rights under Bankruptcy Code § 553.

10  Specifically, the Motion asked that the automatic stay be modified

11  to allow the IRS to "offset the tax refunds totaling $8,733 owed by

12  the IRS to the debtor against the IRS' claim of $9,972.44 against

13  the debtor."  Motion, 4:2-4.

14  While this Motion was pending before the Court, the IRS filed

15  two subsequent amended proofs of claim.  On May 22, 2006, the IRS

16  filed its third amended Proof of Claim, asserting a priority claim

17  of $2,709.93 and an unsecured claim of $9,780.63, for a total of

18  $12,490.56.  On July 10, 2006, the IRS filed a fourth and final

19  amended proof of claim, in the total amount of $9,972.44 (the

20  "IRS's Final Proof of Claim"), divided as follows:

22  Secured Claim pursuant to "Right to setoff"
   $2,702.17    Deficiency owed for 1991 tax period
   $2,488.72    Penalty on 1991 deficiency to Petition Date
23  $1,661.11    Interest on 1991 deficiency to Petition Date
   =========
24  $6,852.00

---

[15]  Under the Amended Plan, there are no secured claims.

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 6 of 47

Unsecured Priority Claim under 507(a)(8)[16]
    $255.00    Deficiency owed for 2001 tax period
     $52.51    Interest on 2001 deficiency to Petition Date
    ========
    $307.51

General Unsecured Claim
   $2,679.78    Balance of Pre-petition interest for 1991
                deficiency
    $133.15    Interest to Petition Date Priority Claim for
   ========    2001 deficiency
   $2,812.93

The balances owing between the parties are unclear. The amounts of the income taxes or refunds owing, as asserted by both parties, have repeatedly changed in the course of the case and the pendency of this Motion. In addition, the amount of the "wild card" exemption asserted by Debtor has -- at least in the body of the pleadings relating to this Motion, although not in the Amended Schedule C itself -- been reduced from $11,047.00 to $6,852.00.[17] Correspondingly, the IRS reduced its request for setoff from $8,733 to $6,852 -- the total of the 2002 and 2004 refunds Debtor alleges is owed to him.[18] The IRS's alleged right of setoff is the sole basis for the $6,852.00 secured portion of the IRS' Final Proof of Claim. Debtor disputes the secured status of the $6,852.00 portion of the IRS's Final Proof of Claim, and has reserved his right to

---

[16]  Even though Debtor has stated that he owes a deficiency in the amount of $2,314.00 for tax year 2003, the IRS has not included such an amount in the amounts the IRS asserts as owing. See Debtor's Decl. at 2:7-17. Indeed, the IRS's Final Proof of Claim indicates "$0.00" tax due for 2003.

[17]  Debtor's Decl. at 2:14-17.

[18]  United States' (IRS's) Supplemental Brief In Support of Its Motion for Relief from Stay ("IRS's Supp. Brief"), filed May 15, 2006, at 4:20.

object thereto pending this decision by the Court.[19]  For the purposes of this Motion, the parties agree that the amount the IRS now seeks to set off is $6,852.00.[20]

II.

ANALYSIS

The issue before the Court is whether the IRS should be granted relief from stay, pursuant to Bankruptcy Code § 362, to allow the IRS to offset, pursuant to § 553, Debtor's pre-petition income tax liabilities against Debtor's pre-petition income tax refunds.[21]  The total amount of the IRS's Final Proof of Claim is $9,972.44, for taxes owing for tax years 1991 and 2001 and pre-petition interest and penalties thereon.  Debtor has asserted a claim for an income tax refund for tax years 2002 and 2004 totaling $6,852.  By the Motion, the IRS seeks to apply the entire $6,852 owing by the IRS to Debtor against the $9,972.44 tax liability owed by Debtor.  If the Motion is granted, the IRS will receive roughly

---

[19]  Debtor's Statement Regarding Claim Amount in Set-off Request by Motion for Relief from Stay ("Debtor's Statement"), filed February 28, 2007, at 2:20-25.

[20]  See Debtor's Statement at 2:26-27; IRS's Final Proof of Claim; and IRS's Supp. Brief at 4:17-20.

[21]  The Court notes that, for cases filed after October 17, 2005, the newly added Bankruptcy Code § 362(b)(26) provides that the setoff by the IRS of a pre-petition tax refund is not stayed. This new section was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 199 Stat. 23 § 418 (Apr. 20, 2005).  While this provision eliminates the need for the IRS to bring a motion for relief from stay, it does not resolve the issue of whether the IRS may set off against tax refunds after the debtor has exempted such funds under § 522, without objection.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 8 of 47

$7,159.51 or slightly over 71% of the $9,972.44 total of the IRS's Final Proof of Claim plus a pro rata distribution on the $2,812.93 balance under the Amended Plan.[22]  If the Motion is denied, the IRS will receive $307.51 as a priority claim and a pro rata distribution on the balance of $9,664.93.

While this difference in the potential recovery on the IRS's Final Proof of Claim is significant, this case presents a much more significant issue than whether, on the facts here presented, the IRS can establish a right of setoff under § 553, thereby establishing cause for relief from the automatic stay under § 362. This larger issue arises from Debtor's opposition to the Motion. Debtor has opposed the Motion on the basis that the IRS is not entitled to set off against the 2002 and 2004 refunds because Debtor has already fully exempted the refunds pursuant to Bankruptcy Code § 522 and CCP § 703.140(b)(5).  Debtor argues that such exemption gives him a superior right to the $6,852.  The primary issue presented by the Motion, therefore, is whether the setoff should be allowed against property the debtor has already fully exempted -- without challenge by the IRS or any other party.

**A.**   **The Applicable Statutory Provisions**

**1.**   **The Automatic Stay of Bankruptcy Code § 362**

Bankruptcy Code § 362 imposes an automatic stay against certain acts by creditors against the debtor or property of the estate.  Included among the acts prohibited by the automatic stay is "the setoff of any debt owing to the debtor that arose before

---

[22]  The $7,159.51 payment is comprised of the $6,852 setoff amount plus $307.51 owed as a priority claim under § 507(a)(8).

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 9 of 47

the commencement of the case under this title against any claim against the debtor[.]" 11 U.S.C. § 362(a)(7). No exception is made under § 362 -- at least as written prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA")-- for setoffs by the IRS.[23] Therefore, the unambiguous language of § 362(b)(7) stays any right the IRS might otherwise have to set off tax refunds against tax liabilities owing by Debtor.

Even though the IRS's right to set off is stayed by the automatic stay, the IRS, like any other creditor, may ask the court to lift the stay to allow it to exercise a right of setoff. As explained by the Ninth Circuit BAP in In re Pieri, 86 B.R. 208, 210 (9th Cir. BAP 1988):

> Under the Code, the allowance of setoff is not automatic but is instead permissible at the discretion of the bankruptcy court, applying general principles of equity. [citations omitted] . . . In order to insure that questions concerning setoff are presented to the court for determination, Section 362(a)(7) specifically stays setoff. The automatic stay does not defeat the right of setoff. Rather, it merely stays its enforcement pending an orderly examination of the debtor's and creditor's rights. [citations omitted]

---

[23] The Petition Date was January 20, 2005. The BAPCPA was enacted on April 20, 2005. A few of its provisions became immediately effective, but the majority of the BAPCPA's amendments became effective on October 17, 2005 -- 180 days after its enactment. Because Debtor's bankruptcy case was commenced prior to the effective date of the BAPCPA, the provisions added by the BAPCPA are inapplicable to Debtor's case. See footnote 21 supra and section II(C)(4) infra.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 10 of 47

## 2. Setoff Under Bankruptcy Code § 553 and Internal Revenue Code § 6402(a)

Bankruptcy Code § 553 addresses a creditor's right of setoff in the bankruptcy context. It provides, in pertinent part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a). Section 553 does not create a federal right of setoff, but preserves existing rights under applicable non-bankruptcy law. <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995); <u>In re De Laurentiis Ent. Group Inc.</u>, 963 F.2d 1269, 1277 (9th Cir. 1992).

The IRS's ability to offset tax liabilities against tax refunds is found at Internal Revenue Code ("IRC") § 6402(a), which provides:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, **may** credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

26 U.S.C. § 6402(a)(emphasis added).

In addition to the requirements for setoff under the applicable non-bankruptcy law -- in this case, the elements of IRC § 6402(a) set forth above -- § 553 imposes certain additional requirements in the bankruptcy context. To establish a valid setoff right under § 553, the IRS must prove: (1) a debt owed by

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 11 of 47

the creditor to the debtor arising pre-petition; (2) a claim of the creditor against the debtor arising pre-petition; and (3) the debt and claim are mutual obligations. In re Verco Industries, 704 F.2d 1134, 1139 (9th Cir. 1983).

There is no dispute that the tax debts and requests for refund in question are mutual pre-petition obligations between Debtor and the IRS. It is undisputed that, but for Debtor's bankruptcy filing, the IRS would be able to exercise its right under IRC § 6402(a) to apply the refunds in this case to Debtor's unpaid tax liabilities.[24] The IRS argues that, pursuant to § 553, it retains the same rights in bankruptcy, and, therefore, should be permitted to set off Debtor's unpaid tax liabilities against his tax refunds, as provided for by IRC § 6402(a).[25] Absent the exemption by Debtor of the refunds in dispute, there would be no question that the IRS should be allowed to exercise its right of setoff under Bankruptcy Code § 553 and Internal Revenue Code § 6402(a).

---

[24] See De Laurentiis, 963 F.2d at 1276 (Chapter 11 discharge did not bar a creditor from raising a pre-petition claim as a setoff against an action brought by the debtor); In re Buckenmaier, 127 B.R. 233, 239 (9th Cir. BAP 1991)(creditor's setoff of its contingent claim for contribution was not enjoined by Chapter 7 discharge).

[25] While it is true that, even within the Bankruptcy Code, there is a strong policy of encouraging the payment of taxes by individuals, the Bankruptcy Code does, nonetheless, provide rights to individuals, vis-a-vis their taxes, that they would not have outside of bankruptcy. For example, non-priority tax debts can be discharged under 727, 1141 and 1328. In addition, in a Chapter 13 case, a debtor has the ability to discharge even priority tax debts upon the completion of plan payments under § 1328(a). Further, plans in bankruptcy cases allow debtors to pay tax debts over time, without the risks of garnishment or attachment.

Setoff rights in bankruptcy are "'generally favored,' and a presumption in favor of their enforcement exists." De Laurentiis, 963 F.2d at 1277 (quoting In re Buckenmaier, 127 B.R. 233, 237 (9th Cir. BAP 1991)).  Setoff is, however, permissive, rather than mandatory, and the decision ultimately rests within the discretion of the court.  In re Cascade Roads, Inc., 34 F.3d 756, 763 (9th Cir. 1994).  In exercising its discretion, the Bankruptcy Court is to apply the general principles of equity.  Setoff, even where otherwise authorized, should not be allowed when it would be inequitable or against public policy to do so.  FDIC v. Bank of America Nat'l Trust and Savings, 701 F.2d 831, 836-37 (9th Cir. 1983), cert. denied, 464 U.S. 935 (1983).

### 3. Debtor's Exemptions under § 522 and CCP § 730.140(b)

To help provide a bankruptcy debtor with a "fresh start" after bankruptcy, the Bankruptcy Code allows the debtor to exempt certain property.  United States v. Security Industrial Bank, 459 U.S. 70, 72 n.1, 103 S.Ct. 407, 409 n.1, 74 L.Ed.2d 235 (1982).  In enacting § 522, Congress noted "[t]he historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 126 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6087.  Section 522(c) bars exempt property from being liable for any debt that arose before the commencement of the case, with certain enumerated exceptions not present here.  A debtor has the ability to remove property from, or acquire property

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 13 of 47

of, the estate by claiming exemptions. <u>Owen v. Owen</u>, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d. 350 (1991).

Property cannot be exempted unless it first falls within the bankruptcy estate. <u>Owen</u>, 500 U.S. at 308; <u>In re Heintz</u>, 198 B.R. 581, 586 (9th Cir. BAP 1996). The bankruptcy estate is comprised of all legal and equitable interests owned by the debtor as of the commencement of the case. 11 U.S.C. § 541(a)(1). Even if claims held by the debtor are contingent and/or unliquidated, they still become property of the estate as of the commencement of the bankruptcy case.[26] It is well established that unliquidated claims for tax refunds for pre-petition taxable years are included within the property of the estate.[27]

Section 522(b) permits a debtor to "exempt (1) property under the federal exemptions contained in Section 522(d), unless State law does not so authorize, or (2) property exempt under State or local law, or other federal law." <u>In re Higgins</u>, 201 B.R. 965, 966 (9th Cir. BAP 1996). Because California has opted out of the federal exemption scheme, State law governs the right to an exemption in this case. 11 U.S.C. § 522(d); CCP § 703.130. Under California law, a bankruptcy debtor may choose between two sets of

---

[26] <u>Sierra Switchboard Co. v. Westinghouse Electric Corp.</u>, 789 F.2d 705, 708 (9th Cir. 1986)(unliquidated emotional distress claim); <u>In re Ryerson</u>, 739 F.2d 1423, 1425 (9th Cir. 1984)(contingent contractual provisions); <u>In re Bronner</u>, 135 B.R. 645, 647 (9th Cir. BAP 1992)(unliquidated bad faith lawsuit); <u>In re Wischan</u>, 77 F.3d 875, 877 (5th Cir. 1996)(unliquidated personal injury causes of action).

[27] <u>Kokoszka v. Belford</u>, 417 U.S. 642, 648, 94 S.Ct. 2431, 2435, 41 L.Ed.2d 374 (1974); <u>Mueller v. Commissioner</u>, 496 F.2d 899, 903 (5th Cir. 1974); <u>In re Barowsky</u>, 946 F.2d 1516 (10th Cir. 1991).

exemptions: (1) the exemptions available under CCP § 703.140(b) or (2) regular state law exemptions. CCP § 703.140(a). The exemptions afforded by CCP § 703.140(b), which were elected by Debtor in this case, are substantially similar to those under Bankruptcy Code § 522(d).

Debtor scheduled his claims for income tax refunds as exempt under CCP § 703.140(b)(5), which closely mirrors Bankruptcy Code § 522(d)(5). These sections are commonly referred to as the "wild card" exemption because they can be used to protect any kind of property whatsoever. In re Goswami, 304 B.R. 386, 390 (9th Cir. BAP 2003). The wild card exemption, as in effect at the Petition Date, permits the exemption of $925 plus any unused portion of the $17,425 homestead exemption afforded by CCP § 703.140(b)(1). The unused portion of the homestead exemption is commonly referred to as the "spillover." 2 David G. Epstein, Steve H. Nickles and James J. White, Bankruptcy Practitioner Treatise Series at § 8-20 (West 1992). Congress noted that the availability of the wild card exemption -- and particularly the spillover component -- was very important "in order not to discriminate against the nonhomeowner." H.R. Rep. No. 95-595 at 361.

Because of the spillover component, the wild card exemption is often the most significant exemption afforded to a non-homeowner debtor. This is clearly the case under the facts at hand. Debtor does not own a home, so he cannot otherwise benefit from the homestead exemption. For Debtor, the wild card exemption -- and his claim of exemption as to his tax refunds in particular -- is the only significant source of funds "to provide him with the basic necessities of life" as Congress recognized exemptions were

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 15 of 47

designed to do. H.R. Rep. No. 95-595 at 126. Debtor's exempted federal and state income tax refunds total $10,069. The combined value of all other items that Debtor has exempted -- which includes household furnishings, clothing, a 1987 Jeep Cherokee and $400 in a checking account -- is only $1,700. Without his income tax refunds, the balance of the exempt funds left to Debtor would represent roughly half of one month's living expenses for Debtor and his family.

**B.   Effect of IRS's Failure to Object to Exemptions**

Bankruptcy Code § 522(l) provides the following procedures for claiming exemptions and objecting to claimed exemptions:

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt.

Federal Rule of Bankruptcy Procedure 4003(b), in turn, provides in pertinent part as follows:

> A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

The Supreme Court has directed that this 30-day limit for objections to exemptions must be strictly applied. <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

In <u>Taylor</u>, the debtor disclosed an employment discrimination lawsuit in her schedules, listed its value as "unknown," and claimed the expected proceeds as exempt. <u>Id</u>. at 640. While the

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

16

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Chapter 7 trustee wrote a letter to the debtor telling her he considered the potential proceeds of the lawsuit to be property of the bankruptcy estate, he decided not to object to the claimed exemption, incorrectly assuming that the case would likely "wind up settling far within the exemption limitation." Id. at 641. After the debtor settled the lawsuit for $110,000, the Chapter 7 Trustee objected to the debtor's exemption. Id.

The trustee made three principal arguments in support of his untimely objection to the exemption of the lawsuit: (1) § 522(l) and Rule 4003(b) "serve only to narrow judicial inquiry into the validity of an exemption after 30 days, not to preclude judicial inquiry altogether";[28] (2) barring his objection as untimely would create improper incentives for a debtor to claim meritless exemptions on the chance that no party will object, thereby making his claimed exemptions valid;[29] and (3) requiring debtors to file exemptions in good faith would eliminate this otherwise improper incentive.[30]

The Supreme Court rejected all of the trustee's arguments and held that he could not contest the validity of an exemption after the 30-day deadline, "whether or not [the debtor] had a colorable

---

[28] Taylor, 503 U.S. at 643.

[29] The Eighth Circuit described the practice as "exemption by declaration." In re Peterson, 920 F.2d 1389, 1393 (8th Cir. 1990), abrogated by Taylor, 503 U.S. 638.

[30] Taylor, 503 U.S. at 644. Prior to Taylor, this broad "good faith" review of exemptions had been adopted by the Fifth, Sixth and Eighth Circuits. See In re Sherk, 918 F.2d 1170, 1174 (5th Cir. 1990); Peterson, 920 F.2d at 1393-94; In re Dembs, 757 F.2d 777, 780 (6th Cir. 1985).

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

17

statutory basis for claiming it." <u>Id</u>. at 644. The Supreme Court

reasoned:

> Deadlines may lead to unwelcome results, but they prompt
> parties to act and they produce finality. In this case,
> despite what [debtor's counsel] repeatedly told him, [the
> trustee] did not object to the claimed exemption. If
> [the trustee] did not know the value of the potential
> proceeds of the lawsuit, he could have sought a hearing
> on the issue, see Rule 4003(c), or he could have asked
> the Bankruptcy Court for an extension of time to object,
> see Rule 4003(b). Having done neither, [the trustee]
> cannot now seek to deprive [the debtor and her attorneys]
> of the exemption.

<u>Id</u>. at 644. The Court noted the trustee's concerns that this

ruling would provide improper incentives to debtors to claim

meritless exemptions, but found that "[t]his concern . . . does not

cause us to alter our interpretation of § 522(l)." <u>Id</u>. at 644.

The Court noted that bad-faith claims should be limited by existing

provisions in the Bankruptcy Code that impose penalties for

improper conduct by debtors or their attorneys.[31] The Court

reasoned that to the extent these other provisions do not curtail

meritless claims by debtors, "Congress may enact comparable

provisions to address the difficulties that [the trustee] predicts

will follow our decision" but the courts "have no authority to

limit the application of § 522(l) to exemptions claimed in good

faith." <u>Id</u>. at 644-45.

Here, as in <u>Taylor</u>, no party objected to the exemptions

asserted by Debtor in his Amended Schedule C. This rendered the

---

[31] <u>See</u>, <u>e.g.</u>, 11 U.S.C. § 727(a)(4)(B) (denial of discharge
for presenting fraudulent claims), Fed. R. Bankr. P. 1008
(requiring filings to be signed to verify the truthfulness under
penalty of perjury), Rule 9011 (authorizing sanctions for signing
meritless documents), and 18 U.S.C. § 152 (imposing criminal
penalties for fraud in bankruptcy cases).

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

18

exemptions valid and unassailable under <u>Taylor</u>. The merits of Debtor's exemption claim can no longer be argued by the IRS or considered by this Court. The IRS failed to object to the claimed exemption within the applicable time period, and the IRS is, therefore, barred from challenging its validity now. <u>Id</u>. at 642. The Ninth Circuit Bankruptcy Appellate Panel has held that "[t]he bankruptcy court's broad equitable power does not enable it to carve out an exception to <u>Taylor</u>'s strict construction of § 522(l) and Fed.R.Bankr.P. 4003[.]" <u>In re Canino</u>, 185 B.R. 584, 595 (9th Cir. BAP 1995)(finding that the Bankruptcy Court could not exercise its equitable authority to recognize informal or de facto objections to debtor's exemption claims); <u>see also</u> <u>In re Boyd</u>, 243 B.R. 756, 766 (N.D. Cal. 2000)(finding "that § 105 cannot cure the trustee's failure to file a timely objection" to debtor's exemptions).

The only case this Court has found, from all the courts within the Ninth Circuit, which provides even the slightest qualification of the strict rule of <u>Taylor</u> is <u>In re Clark</u>, 266 B.R. 163 (9th Cir. 2001). In <u>Clark</u>, the debtor described property claimed as exempt as "five lots listed in qualified retirement plan[.]" <u>Id</u>. at 165. In fact, there was no such retirement plan and the property was owned by an entity other than the debtor. <u>Id</u>. at 170-71. The Ninth Circuit found that because the debtor's exemption claim was "ambiguous and imprecise", the subject property was not automatically exempt under <u>Taylor</u> when no timely objection was filed. <u>Id</u>. at 170-71.

<u>Clark</u> is not applicable to the case at hand. Debtor specified the taxable years for the refunds he exempted. While the amounts

19

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1 of these refunds may not have been established at the time the

2 exemptions were made -- since Debtor had not yet filed the relevant

3 tax returns -- it was clear from the list of exemptions which

4 years' refunds Debtor was exempting. The IRS could have objected

5 to the exemption of the tax refunds on the basis that Debtor was

6 not entitled to a "refund" under IRC § 6402(a) -- as argued in the

7 current Motion -- and the exemption was, therefore, without merit.

8 If the IRS needed additional time to sort out whether, in

9 accordance with its interpretation of IRC § 6402(a), Debtor was

10 entitled to any refunds, or what the value of such refunds might

11 be, the IRS "could have sought a hearing on the issue, see Rule

12 4003(c), or [it] could have asked the Bankruptcy Court for an

13 extension of time to object, see Rule 4003(b)." Taylor, 503 U.S.

14 at 644. The IRS had, in fact, been active in Debtor's case, and

15 had filed an objection to confirmation of the Original Plan on the

16 basis of Debtor's failure to file his tax returns and provide for

17 payment in full of the IRS's priority claims. The IRS certainly

18 was aware that Debtor had failed to file tax returns for the years

19 1999-2004. For whatever reason, the IRS chose not to object to the

20 exemption of the tax refunds. Under Taylor, the tax refunds are

21 exempt and can no longer be subject to the IRS's subsequent efforts

22 to assert a claim of setoff.

23 **C.** **Caselaw Cited by the Parties**

24     While the Court is compelled by Taylor to deny the IRS's

25 Motion on the basis of the IRS's failure to object timely to the

26 exemption of the refunds, neither party addresses the impact of

27

28

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 20 of
47

1  Taylor.[32]  Instead, the arguments presented by Debtor and the IRS

2  highlight a conflict of authority relating to the interplay of

3  setoff under § 553 and exemption under § 522.

4      Debtor's claim of exemption and the IRS's claim of setoff --

5  both significant and compelling in their own right -- appear to

6  conflict such that both cannot be given simultaneous effect.  This

7  conflict has been noted by the Ninth Circuit BAP:

> When Section 522(c) is viewed against Section 553, we see
> that they present us with apparently conflicting
> provisions.  Section 553 allows setoff of mutual debts
> owed between a creditor and the debtor which arose before
> the commencement of the case.  Yet Section 522(c) bars
> exempt property from being liable for any debt, with
> certain enumerated exceptions, that arose before
> commencement of the case.

13  Pieri, 86 B.R. at 212.

14      In this Motion, the parties discuss cases that are part of a

15  larger body of caselaw, from which three, very different, lines of

16  reasoning have developed.  This Court could not find, and the

17  parties have not provided any citations for, any controlling

18  caselaw relating to the interplay of §§ 522 and 553 under the

19  specific facts presented.  Several courts outside the Ninth Circuit

20  have considered the IRS's ability to set off tax refunds in light

21  of a bankruptcy debtor's claim of exemption with respect to such

22  tax refunds.  From those decisions, the three-way split of

23  authority has developed.  One line of cases holds setoff cannot be

24  made against assets exempted under § 522 on the basis that to do so

---

26      [32]  In oral arguments, Debtor's counsel did raise the 30-day
27  period for objections to exemptions under Bankruptcy Rule 4003(b),
but not Taylor specifically.  The Court brought Taylor to the
28  attention of the parties at the January 31, 2007 hearing on the
Motion.

1   would nullify the purpose of § 522, which is to protect a minimal

2   amount of assets necessary to assure a fresh start for the debtor.

3   A second line of cases holds that setoff rights under § 553 always

4   prevail over an exemption under § 522 relying on those courts'

5   reading of various sections of the Bankruptcy Code.  Finally, a

6   third line of cases has argued, as the IRS has done in this Motion,

7   that a debtor's estate has no interest in any tax "overpayment" --

8   and, therefore, the debtor cannot claim any amount as exempt --

9   until the IRS has determined that a refund is owing after "netting"

10  the tax liabilities pursuant to IRC § 6402(a).

11      **1.   Cases Allowing Exemption Over Setoff**

12      As noted above, a significant line of cases has held that a

13  debtor's claim of exemption under § 522 trumps the IRS's right of

14  setoff under § 553.   In re Sharp, 286 B.R. 627, 629 (Bankr. E.D.

15  Ky. 2002); In re Pace, 257 B.R. 918, 920 (Bankr. W.D. Mo. 2000); In

16  re Jones, 230 B.R. 875, 880 (M.D. Ala. 1999); In re Alexander, 225

17  B.R. 145, 149 (Bankr. W.D. Ky. 1998); In re Monteith, 23 B.R. 601,

18  603 (Bankr. N.D. Ohio 1982); In re Tubbs, No. 99-33506-PB7, 2000 WL

19  1203508, at *1 (Bankr. S.D. Cal. 2000)("[T]o the extent the

20  debtors' pre-petition tax liabilities are dischargeable, the IRS's

21

22

23

24

25

26

27

28

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

22

right to setoff does not trump the debtors right of exemption").[33]

<u>Alexander</u> explains the reasoning behind this approach as follows:

> If the rule were otherwise, § 522(c) would simply have no meaning. [citations omitted]  A debtor would completely lose the ability to exempt property from the reach of creditors possessing a right of offset under § 553. [citations omitted]  It is a basic tenet of statutory construction that 'when two provisions of a statute are in conflict they should be interpreted in such a fashion as to give meaning to the whole.' [<u>In re Miel</u>, 134 B.R. 229, 235 (Bankr. W.D. Mich. 1991); <u>In re Monteith</u>, 23 B.R. 601, 603 (Bankr. N.D. Ohio 1982).]  Thus, where one construction of a statute will nullify a provision of that statute, while an equally plausible construction will give effect to the statute as a whole, the latter construction is preferred.  [citations omitted]  In this case, if § 553 and § 522 are construed so as to allow the IRS to exercise its right of set-off against the Debtor's exempt property, § 522(c) will be rendered without effect or meaning.  On the other hand, construing the provisions to mean that a right of set-off under § 553 is limited to property not claimed exempt under § 522, gives effect to both provisions.

<u>Alexander</u>, 225 B.R. at 149.

In addition to the statutory construction argument noted above, these cases also emphasize that favoring exemptions over setoff rights furthers the chief policy behind the Bankruptcy Code -- providing the debtor with a fresh start.  <u>Pace</u>, 257 B.R. at 920, <u>Jones</u>, 230 B.R. at 880, <u>Alexander</u>, 225 B.R. at 149.

---

[33]  Outside the context of a tax liability, many other cases have also found that exemptions under § 522 trump setoff under § 553.  <u>See</u> <u>In re Tarbuck</u>, 318 B.R. 78 (Bankr. W.D. Pa. 2004)(bank could not set off deficiency judgment against funds in bank account that the debtor claimed as exempt); <u>In re Killen</u>, 249 B.R. 585 (Bankr. D. Conn. 2000)(debtor's claim of exemption in her tax refund precluded government from setting debtor's refund off against her dischargeable, pre-petition debt to the Department of Housing and Urban Development); <u>In re Haffner</u>, 12 B.R. 371 (Bankr. M.D. Tenn. 1981)(bank not entitled to setoff against certificate of deposit claimed by debtor as exempt).

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

23

Finally, these cases hold that the legislative history of § 522 supports their position. One of the versions of § 522(c) considered by Congress, but which was never enacted, would have allowed the IRS to set off tax debts against tax refunds a debtor claimed as exempt.[34] By rejecting that version of § 522(c), "Congress did not intend that exempt property be liable to the payment of dischargeable tax debts, whether by set-off or otherwise." Monteith, 23 B.R. at 604; see also Jones, 230 B.R. at 880-81; Alexander, 225 B.R. at 150. This position, that exemptions trump setoff rights, has been identified by many courts as the "majority rule" on the issue of whether § 553 must yield to § 522. Pace, 257 B.R. at 920; Jones, 230 B.R. at 879; Alexander, 225 B.R. at 149.

---

[34] In relevant part, the legislative history from the report of the Senate Judiciary committee on Senate Bill 2266, which was not ultimately passes, states:

> Subsection (c)(3) permits the collection of dischargeable taxes from exempt assets. Only assets exempted from levy under Section 6334 of the Internal Revenue Code or under applicable state or local tax law cannot be applied to satisfy these tax claims. This rule applies to pre-petition tax claims against the debtor regardless of whether the claims do or do not receive priority and whether they are dischargeable or nondischargeable. Thus, even if a tax is dischargeable vis-a-vis the debtor's after-acquired assets, it may nevertheless be collectible from exempt property held by the estate.

S. Rep. No. 95-989, 95th Cong.2nd Sess. at 76 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5862.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

24

## 2.  Cases Allowing Setoff Over a Claimed Exemption

While it may have been the "majority" view that exemptions should prevail over a claim of setoff by the IRS, several cases have found the opposite.[35]  This second line of cases holds that § 553 can only be given effect if exemptions remain subject to setoff.  IRS v. White, 365 B.R. 457 (M.D. Pa. 2007); United States v. Luongo, 255 B.R. 424 (N.D. Tex. 2000), aff'd on different grounds, 259 F.3d 323 (5th Cir. 2001); In re Martinez, 258 B.R. 364 (Bankr. W.D. Tex. 2000); In re Glenn, 2000 WL 33364195 (Bankr. W.D. Wis. 2000); Posey v. IRS, 156 B.R. 910 (W.D.N.Y. 1993); In re Eggemeyer, 75 B.R. 20 (Bankr. S.D. Ill. 1987).[36]  In rejecting the position taken by the majority of cases favoring exemption over setoff, the Bourne court explained this second line of reasoning as follows:

> This court disagrees with the majority's conclusion that allowing exemption rights under § 522(c) to supersede a creditor's setoff rights under § 553 gives effect to both provisions and prevents the nullification of § 522(c). To the contrary, by giving primary effect to the exemption rights of a debtor, the offset right of a creditor is often completely nullified, as would be the result in the instant case.  It is just as logical to give effect to both provisions by holding that a debtor may claim an exemption which is valid as to all creditors except one having a right of offset.

---

[35]  In re Pigott, 330 B.R. 797, 799 (Bankr. S.D. Ala. 2005) notes this was considered the majority view, "at least until 2001", when IRS v. Luongo, 259 F.3d 323 (5th Cir. 2001) and In re Bourne, 262 B.R. 745 (Bankr. E.D. Tenn. 2001) were issued.

[36]  Outside the tax liability context, see also  In re Junio, 2002 WL 32001412 (E.D.N.Y. 2002)(allowing bank to set off checking account funds against loan balance claimed as exempt); Bourne, 262 B.R. 745 (allowing setoff of debt owed to HUD against tax refund claimed as exempt); In re Wiegand, 199 B.R. 639 (W.D. Mich. 1996)(allowing credit union to set off debt against debtor's credit union account claimed as exempt).

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 25 of 47

In re Bourne, 262 B.R. 745, 756 (Bankr. E.D. Tenn. 2001). This approach holds that a debtor can still exempt property under § 522 from the reach of all other creditors -- just not those holding a valid right of setoff. In re Wiegand, 199 B.R. 639, 642 (W.D. Mich. 1996). These cases point to the language of § 553 -- specifically, that "this title does not affect any right of a creditor to offset a mutual debt" -- and argue that it is clear and unambiguous.

In further support of their interpretation of the Congressional intent with respect to a creditor's right of setoff, some of these cases[37] cite the language of § 542(b) regarding turnover of property of the estate which provides:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*

11 U.S.C. § 542(b)(emphasis added). The courts in these cases read this provision as unequivocally allowing any creditor with a right of setoff to retain the property -- even if the debtor properly exempted the property.[38]

---

[37] White, 365 B.R. at 462, citing Eggemeyer, 75 B.R. at 22, Posey, 156 B.R. 910, Wiegand, 199 B.R. at 643 and Bourne, 262 B.R. at 754.

[38] This cannot be an accurate interpretation of 542(b) since creditors do not have an absolute right to retain property just because they assert a right of setoff. As noted by the Ninth Circuit BAP in Pieri, for example, California state law does not allow setoff against exemptions that are designed to ensure payment of daily living expenses, such as wages and unemployment or disability benefits. Pieri, 86 B.R. at 210-11. See also footnote 48, infra. Further, within the Ninth Circuit, it is well settled that the allowance or disallowance of a setoff is ultimately within

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 26 of 47

In response to this argument, the pro-exemption cases have countered that § 542(b) does not apply to property that has been exempted by the debtor because it is no longer "property of the estate." <u>Jones</u>, 230 B.R. at 881-82; <u>Alexander</u>, 225 B.R. at 150-51. "In this case, the IRS simply does not have a valid right of set-off. Debtor has properly exempted his tax refund; consequently, the refund is no longer property of the estate. Rather, it is property belonging to Debtor." <u>Alexander</u>, 225 B.R. at 151 (citations omitted). Such property is then subject to turnover pursuant only to § 542(a), which requires an entity that possesses property that the debtor may exempt, to deliver such property to the trustee. <u>Bourne</u>, 262 B.R. at 755. Section 542(a) does not contain an express exception for a creditor with a right to set off.

Pro-setoff cases respond that a debtor's claim to a refund is a "debt" owed to the debtor by the IRS, rather than funds belonging to the debtor. Accordingly, any turnover request is covered by § 542(b), not § 542(a), and is therefore subject to setoff rights, as preserved by § 553. <u>Bourne</u>, 262 B.R. at 756.

This debate is somewhat circuitous. If a court assumes a tax refund can be exempted, then § 542(a) is the applicable provision. If, however, the court starts with the assumption that a mere right

the discretion of the trial court. <u>Cascade Roads</u>, 34 F.3d at 763. <u>Accord</u> 5 Collier on Bankruptcy ¶ 553.02[3] (15th ed. rev. 2003); <u>Bohack Corp. V. Borden, Inc. (In re Bohack, Corp.)</u>, 599 F.2d 1160, 1165 (2d Cir. 1979); <u>U.S. v. Norton</u>, 717 F.2d 767, 772 (3d Cir. 1983); <u>Cohen v. Savings Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Management Corp.)</u>, 896 F.2d 54, 57 (3d Cir. 1990); <u>DuVoisin v. Foster (In re Southern Indus. Banking Corp.)</u>, 809 F.2d 329, 332 (6th Cir. 1987); <u>In re Myers</u>, 362 F.3d 667, 672 (10th Cir. 2004); <u>Dayton Sec. Assocs. V. Securities Group 1980 (In re The Sec. Group 1980)</u>, 74 F.3d 1103, 1114 (11th Cir. 1996).

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 27 of 47

of setoff (as distinguished from the situation where the creditor has already exercised a setoff before the debtor exempted the property) prevents a claim of exemption, then § 542(b) would control. The Court finds that this debate is not supportive of either position at least when, as here, there is both property that has already been fully exempted, and a subsequent claim of setoff as to the same property. Only after the court determines whether setoff or exemption should prevail is the question resolved of whether § 542(a) or § 542(b) is triggered.

In response to the "fresh start" policy argument raised in favor of exemptions, some decisions favoring setoff note that "this policy is not always paramount and is often subordinated to other social and economic concerns and objectives." Bourne, 262 B.R. at 757. These countervailing objectives include the common law rights of creditors to set off mutual debts. Martinez, 258 B.R. at 367. The pro-setoff cases argue that not upholding setoff rights in bankruptcy would provide incentives to creditors to set off debts earlier, rather than risking the loss of the setoff right in a later bankruptcy. Recognition of the setoff right "removes an incentive that might otherwise lead a creditor to take precipitous action." Bourne, 262 B.R. at 758, quoting, 5 Collier on Bankruptcy ¶ 553.02[2] (15th ed. rev. 2000).[39]

---

[39] 5 Collier on Bankruptcy ¶ 553.02[2], as quoted by Bourne, discusses the policy reasons for the preservation of rights of setoff under § 553. This section of Collier does not address the interplay between §§ 522 and 553 or even mention exemptions under § 522.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

28

In response to the arguments offered by the pro-exemption cases relating to the legislative history of § 522(c), the pro-setoff cases counter:

> [T]he conclusion that exempt property is not liable for discharged taxes does not necessarily preclude offset against property claimed exempt. As the Wiegand court recognized, there is a distinction between collecting on a unilateral debt and offsetting a mutual obligation. In re Wiegand, 199 B.R. at 642. The majority courts relying on legislative history may have been persuaded by the fact that the IRS was seeking an offset against the debtor's discharged tax liability. See In re Jones, 230 B.R. at 876; In re Alexander, 225 B.R. at 147; In re Monteith, 23 B.R. at 602. If debts other than tax obligations had been involved, the legislative history would have provided no basis for denial of offset.

In re Bourne, 262 B.R. at 757. Stated another way, just because Congress chose not to permit the collection of dischargeable taxes from exempt assets -- as was proposed in the Senate's version of § 522(c) -- does not necessarily mean that that decision by Congress was meant to address the interplay of exemptions under § 522 and setoff under § 553. The pro-setoff cases argue that the legislative history at issue only dealt with the issue of exemptions standing alone, not in combination with § 553.

**3. Cases Allowing "Netting" of Liabilities by the IRS**

A third, distinct line of reasoning has gained support in the last few years. These cases draw a clear distinction between a tax "overpayment" and a tax "refund." They hold that a debtor's estate has no interest in any tax overpayment until the IRS has determined that a refund is owing after "netting" the tax liabilities pursuant to IRC § 6402(a).[40] If the estate has no interest in a tax

---

[40] Pettibone Corp. v. United States, 34 F.3d 536 (7th Cir. 1994); United States v. Midway Indus. Contractors, Inc. (In re Midway Indus. Contractors, Inc.), 178 B.R. 734, 737 (N.D. Ill. 1995)(IRS did not violate the automatic stay when it offset a tax

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 29 of 47

overpayment until after the IRS's netting, then the debtor cannot even claim the overpayment/refund as exempt. Therefore, under this third line of reasoning, a claim of exemption by a debtor with respect to an anticipated tax "refund" does not preclude the IRS from offsetting pre-petition tax liabilities against such pre-petition "overpayment."[41]

The case most cited as supporting this "netting" argument is the Fifth Circuit's decision in In re Luongo, 259 F.3d 323, 335 (5th Cir. 2001). In Luongo, after a discharge had been entered in favor of a Chapter 7 debtor and her bankruptcy case had been closed, the IRS set off the debtor's discharged pre-petition income tax liability for 1993 against a pre-petition tax refund owing to the debtor for 1997. The debtor then reopened her bankruptcy case, filed amended schedules listing the tax refund as exempt, and brought an adversary proceeding to compel turnover of the 1997 refund. Both the debtor and the IRS brought motions for summary judgment on the debtor's turnover action. The Bankruptcy Court granted the debtor's motion, specifically adopting the pro-exemption reasoning of Alexander, 225 B.R. 145. U.S. v. Luongo,

---

liability against a tax refund on the ground that "netting" of the obligation was not a "setoff" within the meaning of the Code); Lyle v. Santa Clara Co. Dept. of Child Support (In re Lyle), 324 B.R. 128, 131-32 (Bankr. N.D. Cal. 2005); Security Pac. Nat'l Bank v. U.S. (In re Siebert Trailers), 132 B.R. 37, 40 (Bankr. E.D. Cal. 1991); IRS v. Luongo (In re Luongo), 259 F.3d 323, 335 (5th Cir. 2001).

[41] This reasoning is contrary to the well-established principles that property of the estate, which may be exempted by a debtor, includes: (1) contingent and/or unliquidated claims held by the debtor; and, more specifically, (2) unliquidated tax refunds for pre-petition taxable years. See footnotes 26 and 27 supra.

255 B.R. 424, 427 (N.D. Tex. 2000). The IRS appealed this decision to the District Court. The District Court reversed the Bankruptcy Court's decision, and granted the IRS's cross-motion for summary judgment, following the pro-setoff line of cases noted above and holding that the "clear and unambiguous language of § 553(a)" dictates that "the IRS's right of setoff is unaffected by Luongo's claims that (1) the tax refund is exempt property and (2) that the tax liability was discharged in the bankruptcy proceeding." Luongo, 255 B.R. at 427-28. The debtor then appealed to the Fifth Circuit. The Fifth Circuit affirmed the District Court's decision, but on very different grounds.

While both the District Court and the Fifth Circuit in Luongo came down in favor of the IRS, the Fifth Circuit rejected the pro-setoff reasoning adopted by the District Court and, instead, relied upon the "netting" provisions of IRC § 6402(a). Specifically, the Fifth Circuit held:

> A debtor's claim to a tax refund is property of the estate. Mueller v. Commissioner, 496 F.2d 899, 903 (5th Cir. 1974). However, under 26 U.S.C. § 6402(a) the debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability. . . . Section 6402(a) grants the IRS discretion whether to offset against a debtor's unpaid tax liability or to refund the overpayment to the taxpayer. The IRS elected to exercise that discretion to apply the overpayment to Appellant's past liability. Because the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate. Absent an interest in the estate to the refund, it could not properly be exempted by the debtor under § 522.

Luongo, 259 F.3d at 335. The unusual, but crucial, factual circumstance in Luongo, is that the IRS set off the pre-petition tax liability against the pre-petition tax refund **before** the debtor reopened her bankruptcy case and amended her Schedules to claim the

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 31 of
47

tax refund as exempt. The Fifth Circuit held that because the IRS had elected to set off the tax liability, there was no longer a balance to be refunded to the debtor. If no refund existed after the setoff, then it could not have become property of the estate and could not have been properly exempted by the debtor. Because the debtor "could not properly exempt the overpayment at issue", the Fifth Circuit did "not reach the exemption issue decided below –that is, whether § 522(c) prevents a creditor from exercising its right to setoff preserved in § 553." Id. at 328. Therefore, the balance of the Fifth Circuit's opinion in Luongo relating to the netting argument is reduced to dicta. Luongo stands for the simple proposition that when a setoff occurs prior to the exemption, there is nothing left to exempt -- not that the IRS has some superior right to exempt funds through netting under IRC § 6402. Unlike in the present case, Taylor was not controlling in Luongo since the setoff occurred prior the claim of exemption.

It is important to note that Luongo arose in the context of a motion by the debtor to compel the turnover of a tax refund which had been set off by the IRS before the debtor reopened her bankruptcy case. Luongo, and its discussion of the netting argument, would not support a motion for relief from stay -- as is currently pending before this Court. In Luongo, the IRS did not need relief from stay to offset the tax liability against the tax refund, because the debtor's bankruptcy case was closed at the time of the setoff.

The problem is that several, more recent decisions have taken the Fifth Circuit's discussion of netting under IRC § 6402 out of context and have ignored the unique fact that, in Luongo, the

1   netting occurred prior to the claim of exemption by the debtor.   In

2   some instances, these newer decisions have used the Fifth Circuit

3   discussion of netting under IRC § 6402(a) to validate post-petition

4   setoffs by the IRS.[42]  Following the reasoning of these cases, since

5   IRC § 6402 defines whether a refund exists, the IRS may set off

6   debts -- pre-petition or post-petition -- and thereby remove a

7   potential refund from the property of the estate.[43]  Some of these

8   cases have used the Fifth Circuit's <u>Luongo</u> decision as a basis for

9   granting relief from stay in favor of the Federal government to

10  effectuate a post-petition setoff pursuant to IRC § 6402, even after

11  the tax refund in question had been fully exempted by the debtors.

12  <u>See</u>, <u>e.g.</u>, <u>Shortt</u>, 277 B.R. 683.

13      However, this is a complete misapplication of <u>Luongo</u>.  <u>Luongo</u>

14  does not stand for the proposition that the IRS has an absolute

15  right to set off pursuant to IRC § 6402(a) at anytime.   Rather,

16  _____

17      [42]  <u>In re Lyle</u>, 324 B.R. 128 (Bankr. N.D. Cal. 2005)(denying
    Chapter 13 debtor's motion to compel turnover of tax refunds and
18  for damages for violation of the automatic stay resulting from
    IRS's setoff of pre-petition support obligations against
19  anticipated pre-petition tax refund pursuant to IRC § 6402(c)); <u>In
    re Baucom</u>, 339 B.R. 504, 507 (Bankr. W.D. Mo. 2006)(denying
20  debtor's motion to reopen case and compel turnover of tax refund
    against which IRS offset debt owed to Rural Housing Department);
21  <u>Beaucage v. IRS</u>, 342 B.R. 408, 411 (D. Mass. 2006)(dismissing
    adversary proceeding challenging post-petition setoff of tax
22  liability); <u>In re Jones</u>, 359 B.R. 837, 841 (Bankr. M.D. Ga.
    2006)(granting summary judgment in favor of IRS in adversary
23  brought by debtor to recover anticipated tax refunds against which
    IRS set off pre-petition tax liability); <u>In re Shortt</u>, 277 B.R.
24  683, 692 (Bankr. N.D. Tex. 2002)(annulling stay to validate setoff
    of pre-petition debt owed to Army and Air Force Exchange Service
25  against tax refund under IRC § 6402(d)); <u>In re Pigott</u>, 330 B.R.
    797, 800 (Bankr. S.D. Ala. 2005)(upholding objection by IRS to
26  Chapter 7 debtor's claim of exemption as to anticipated refund).

27      [43]  <u>See Lyle</u>, 324 B.R. 128; <u>Pigott</u>, 330 B.R. 797; <u>Shortt</u>, 277
28  B.R. 683.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

33

Luongo held that where the IRS **has** properly exercised its setoff -- outside the pendency of the bankruptcy case -- there no longer is a "refund" which may, thereafter, become property of the estate. This Court agrees with Luongo on this point. As noted above, the Fifth Circuit's decision in Luongo specifically states that it did "not reach the exemption issue decided below -- that is, whether § 522(c) prevents a creditor from exercising its right of setoff preserved in § 553." Luongo, 259 F.3d at 328. Therefore, it is inaccurate for these more recent cases to cite the Fifth Circuit's decision in Luongo as authority for the proposition that, because of the netting allowed by IRC § 6402(a), the IRS's setoff claim under § 553 trumps an exemption asserted by the debtor, without opposition, under § 522.

Although the netting argument has been frequently cited favorably in recent setoff cases, as if it represented a new, important insight on the setoff issue, it is not at all new. Long before Luongo and the later cases which greatly expanded the netting argument, the Seventh Circuit espoused the netting theory in Pettibone Corp. v. United States, 34 F.3d 536 (7th Cir. 1994). Pettibone even went so far as to suggest in dicta that netting of pre-petition tax liabilities by the IRS does not constitute a "setoff" within the meaning of Bankruptcy Code and, therefore, the IRS would not be subject either to the automatic stay under § 362 or the requirements for setoff under § 553.[44] This position was then

---

[44] After explicitly setting forth this position, the Pettibone court then said it did not reach the issue of whether the IRS's setoff "would have been permissible as a setoff under the Bankruptcy Code[,]" because the plan permitted the setoff. Pettibone, 34 F.3d at 539-40.

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 34 of 47

interpreted as the holding of _Pettibone_ by many courts and _Pettibone_ was cited as authority for the position that "no setoff [occurs] when the IRS [nets] the debtor's underpayments and overpayments in arriving at the amount of the debtor's refund." _United States v. Midway Indus. Contractors, Inc. (In re Midway)_, 178 B.R. 734, 737 (N.D. Ill. 1995). Unlike the more recent netting cases, however, _Pettibone_ and the litany of cases that followed it did not deal with a conflict between §§ 522 and 553 -- _Pettibone_ solely addressed the issue of setoff by the IRS.

_Pettibone_'s proposition that netting by the IRS does not constitute a setoff under § 553 is echoed in the reasoning of the more recent pro-setoff cases, which hold that this netting removes the refund from the property of the estate. If IRC § 6402 simply defines whether a refund exists, as these recent cases argue, the post-petition netting of pre-petition tax liabilities would not constitute a "setoff" within the meaning of the Bankruptcy Code. If refunds do not become property of the estate unless there are funds left after the IRS nets liabilities -- assuming, of course, the IRS chooses to do so under IRC § 6402(a)[45] -- then there would be no need for the IRS to seek relief from stay to effectuate such a netting. The IRS would not be taking any action against property of

_____

[45] The setoff of tax liabilities against tax refunds under IRC § 6402(a) is discretionary. Setoffs for other types of debts are governed by other sections of § 6402 -- past due support obligations are governed by § 6402(c), obligations to other federal agencies are governed by § 6402(d) and obligations on state income tax are governed by 6402(e). The setoffs under §§ 6402(c), (d) and (e) are mandatory in nature, not at the discretion of the IRS.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

35

the estate since, per this line of reasoning, there is no refund to be property of the estate.

After <u>Pettibone</u>, several other courts rejected the notion that the IRS's netting under IRC § 6402 does <u>not</u> constitute a setoff within the meaning of the Bankruptcy Code, thereby eliminating the need for the IRS to seek relief from stay. Rather, those courts specifically held that the IRS *did* need relief from stay to allow a setoff in order to net refunds owed by the IRS against taxes owed by the taxpayer. The predominant case rejecting <u>Pettibone</u> and the netting argument is the Second Circuit's decision in <u>Aetna Casualty and Surety Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)</u>, 94 F.3d 772, 780-82 (2d Cir. 1996).[46] <u>Chateaugay</u> unequivocally held that the "netting" of an "overpayment" to extinguish an "underpayment" is a classic setoff within the meaning of the Bankruptcy Code. Therefore, the IRS, like any other creditor with a

---

[46] <u>See also</u> 5 <u>Collier on Bankruptcy</u>, ¶ 553.06[3][b] (15th ed. rev. 2007), fn. 26, <u>citing</u> <u>United States v. Norton</u>, 717 F.2d 767, 772, 9 C.B.C.2d 336, 344 (3d Cir. 1983); <u>United States v. Reynolds</u>, 764 F.2d 1004, 1006-1007 (4th Cir. 1985); <u>United States v. Johnson (In re Johnson)</u>, 136 B.R. 306, 308-11 (Bankr. M.D. Ga. 1991); <u>In re Hackney</u>, 20 B.R. 158, 159 (Bankr. D. Idaho 1982); <u>Rozel Indus., Inc. v. Internal Revenue Serv. (In re Rozel Indus., Inc.)</u>, 120 B.R. 944, 948 (Bankr. N.D. Ill. 1990); <u>In re Franklin Sav. Corp.</u>, 177 B.R. 356, 359-60 (Bankr. D. Kan. 1995); <u>In re Academy Answering Servs., Inc.</u>, 20 C.B.C.2d 174, 177-78, 90 B.R. 294, 295-96 (Bankr. N.D. Ohio 1988); <u>rev'd</u> on other grounds, 100 B.R. 327 (N.D. Ohio 1989); <u>United States v. Perry (In re Perry)</u>, 26 B.R. 599, 600 (Bankr. E.D. Pa. 1983); <u>In re Internal Revenue Service Liab. & Refunds</u>, 10 C.B.C.2d 609, 611, 30 B.R. 811, 812-14 (M.D. Tenn. 1983)(vacating as violating the automatic stay and the strictures of section 553 an agreed order that would have permitted IRS to exercise its Section 6402(a) setoff procedures in every chapter 13 reorganization case in the district without further judicial inquiry); <u>Runnels v. I.R.S. (In re Runnels)</u>, 134 B.R. 562, 564-65 (Bankr. E.D. Tex. 1991); <u>In re Burrow</u>, 36 B.R. 960, 963 (Bankr. D. Utah 1984).

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

setoff right that has not yet been exercised, is subject to the

provisions of §§ 362 and 553.  The Chateaugay court held:

> By arguing that the "accounting" procedure under 6402(a)
> is something other than an ordinary right of setoff, the
> government in essence asks us to find that the bankruptcy
> laws do not apply to the IRS.  This we cannot do.  For the
> Supreme Court has quite clearly held that "[n]othing in
> the Bankruptcy Code or its legislative history indicates
> that Congress intended a special exception for the tax
> collector."  United States v. Whiting Pools, Inc., 462
> U.S. 198, 209, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515
> (1983);  see also United States ex rel. IRS v. Norton, 717
> F.2d 767, 772 (3d Cir. 1983).

Chateaugay, 94 F.3d at 780-81.[47]

This Court finds Chateaugay much more persuasive and better

reasoned than Pettibone.  The problems noted in Chateaugay with the

netting approach, as set forth in the above quote, are well taken.

The setoff sought by the IRS is not unlike the setoff by any other

creditor.  The tax refunds in dispute ceased being property of the

estate when Debtor exempted them, without opposition by the IRS.

Taylor, 503 U.S. 638.  At that point, the exempt tax refunds were no

longer subject to any possible setoff against debts owed by the

estate.

**4.  Analysis of Three Lines of Cases**

The interplay between §§ 522 and 553 is clearly a difficult

issue.  While the three lines of cases noted above provide extensive

---

[47]  Indeed, even the IRS has interpreted a setoff under IRC
§ 6402(a) as a "collection activity" and not merely an accounting
procedure.  See Hall v. Commissioner of Internal Revenue, 2004 WL
1616382, at *2 (U.S. Tax Ct. 2004), citing Campbell v.
Commissioner, 121 T.C. 290, 292, 2003 WL 22765712 (2003) and secs.
1.6015-5(b)(2)(I), 1.6015-9, Income Tax Regs (defining an offset of
an overpayment against a liability pursuant to section 6402 as a
collection activity effective for requests for relief from joint
and several liability filed on or after July 18, 2002).

justifications for the decisions reached, the strict application of any of these three lines of reasoning is problematic. To adopt the stringent reading of § 553, which dictates that § 553 always trumps § 522, as advocated by decisions such as Bourne, would necessarily ignore the directives from within the Ninth Circuit to consider the equities presented in each case. However, adopting an approach that always favors exemption over setoff -- outside of the Taylor failure to object context -- would be equally inappropriate.

The interpretation advocated by the cases adopting the netting approach -- and primarily relied upon by the IRS in its Motion -- is, however, the most problematic. Luongo, as expressly stated by the Fifth Circuit in its decision, does not address what should happen when the IRS seeks to set off against a refund that is already exempt. Those *are* the facts currently before the Court. In addition, as discussed above, Luongo and the netting argument clearly do not support the granting of a motion for relief from stay, which is currently before the Court in this case. Rather, the logical extension of the netting argument, as discussed in Pettibone and rejected in Chateaugay, would be that the IRS could operate entirely outside the Bankruptcy Code in netting pre-petition tax refunds against pre-petition tax liabilities, and the IRS would not need to seek relief under §§ 362 and 553.

While the BAPCPA provides that, in post-BAPCPA cases, the automatic stay does not apply to setoffs by the IRS pursuant to § 6402(a), the new § 362(b)(26) did not exist at the time this case was filed. Further, the new § 362(b)(26) recognizes that the netting of tax liabilities under IRC § 6402 is, in fact, a "setoff" within the meaning of the Bankruptcy Code -- it simply provides that

the automatic stay no longer applies to such setoffs. However, the new § 362(b)(26) does not address the ability of the IRS to offset pre-petition tax liabilities after a debtor has fully exempted pre-petition tax refunds. This issue was not addressed by the BAPCPA and is not presently before this Court. In the future, the conflict between §§ 522 and 553 may arise either in the context of the IRS's objection to a claim of exemption with respect to a tax refund, or in the context of a turnover action by the debtor under § 542 -- rather than, as here, in the context of a motion for relief from stay to effect a setoff. See footnote 21 supra.

The crux of the IRS's Motion is that the IRS must be granted relief from stay because there is no "refund" Debtor may exempt after the IRS's netting of the pre-petition tax debts pursuant to IRC § 6402(a). This argument rests solely upon distinction between a tax "overpayment" and a tax "refund" adopted by the cases following the netting approach. However, this Court finds this premise unworkable for largely the same reasons as expressed by the Second Circuit in Chateaugay.

If the netting argument is accepted, then the IRS does not need relief from stay to effectuate the "netting" under IRC § 6402(a), since, under this view, the netting merely defines whether a "refund" exists and does not constitute a setoff within the meaning of § 553. For this reason, even if the Court were to adopt the underlying basis for the Motion, i.e., that there is no property of the estate until the IRS performs its netting operation, it would, nevertheless, have to deny the Motion itself. The IRS has not argued in the Motion that it can set off without relief from stay. Therefore, that issue is not properly before this Court and is not

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 39 of
47

decided by this decision. The Court merely finds that <u>Luongo</u> and the decisions adopting the netting approach do not support relief from stay as requested by the Motion.

**D.** **Alternative Holding - Balancing of Equities**

If <u>Taylor</u> is not dispositive of the issue before the Court, the Court also finds, as an alternative holding, that the Motion should be denied on its merits. Perhaps contrary to the three lines of cases noted above, the Ninth Circuit directs this Court to balance the equities presented. <u>See</u> <u>FDIC v. Bank of America</u>, 701 F.2d at 836-37; <u>Cascade Roads</u>, 34 B.R. at 763; <u>Pieri</u>, 86 B.R. at 210. In balancing those equities, there are several important factors that weigh in Debtor's favor.

First and foremost, the IRS did not object to the exemption of the refunds by Debtor. The IRS could have easily objected to the exemption on the basis that, as the IRS well knew, Debtor had not yet filed his tax returns for 1999-2004. These tax returns were not fully filed by Debtor until roughly two months after Debtor asserted his exemptions. The IRS had been active in Debtor's case early on and had filed an objection to confirmation of the Original Plan on this very basis. As also noted above, the IRS could have objected to the exemption on the basis that Debtor was not entitled to a "refund" under IRC § 6402(a) and the exemption was, therefore, without merit.

Alternatively, the IRS could have also asked for an extension of time, pursuant to Federal Rule of Bankruptcy Procedure 4003(b), to object to the exemptions until it had an opportunity to review the late-filed tax returns for 1999-2004 and to evaluate its potential setoff claims under IRC § 6402(a). The IRS does not argue

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

40

that it was somehow prevented from filing a timely objection to the exemptions, or that to require the IRS to object to the exemptions of tax refunds by debtors would present an undue burden.

The IRS simply chose not to file an objection. Therefore, the merits of such potential objections and/or requests for an extension of time to file an objection are not properly before this Court, and this decision is not meant to address how the Court might have ruled on such objections or requests. The fact that the IRS chose not to file an objection to the exemption of the tax refunds prevented the Court from addressing any such issues in a timely manner and weighs in Debtor's favor in a substantive balancing of the equities -- in addition to the dispositive effect such failure to object has under Taylor.

Second, IRC § 6402(a) does not confer upon the IRS any extraordinary status or rights. It is merely a provision allowing the discretionary setoff of debts owed to the IRS. Setoff is a right held by many types of creditors under various non-bankruptcy laws. Other subsections of IRC § 6402 do confer special rights and status to other governmental agency creditors, if certain additional requirements are met.[48]

For example, in Lyle, the state agency to which dependent care debts were owed intercepted the debtor's future income tax refunds, pursuant to IRC § 6402(c). Pre-petition, the state agency notified the debtor that his delinquent child support obligations would be

---

[48] IRC § 6402(c) allows for the interception of tax refunds for the payment of pay due support obligations. IRC § 6402(d) allows for the interception of tax refunds for the payment of debts owed to Federal agencies, other than the IRS. IRC § 6402(e) allows the interception of tax refunds for the payment of state income tax obligations.

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

41

subject to collection through the federal tax intercept program, and that if he wanted to dispute obligations he needed to contact the state agency. The debtor did not dispute the obligations. This satisfied the notice requirements of IRC 6402(c). When the tax refund was due to the debtor post-petition in Lyle, the IRS was already under a pre-existing statutory obligation to transfer the funds to the intercepting state agency. The IRS had no discretion to do anything else, and the Bankruptcy Court had no authority to order otherwise.[49] Here, there is no such statutorily-mandated interception in place by another governmental agency. This is simply an attempt by the IRS to exercise its discretionary ability to set off debts owed to itself. Under the facts at hand, the setoff rights of the IRS under IRC § 6402(a) are just the same as any other creditor's setoff rights and the IRS is not afforded special treatment.

Third, this discretionary right of setoff was not timely exercised by the IRS in this case. Unlike Luongo, the IRS had not set off the tax liabilities prior to Debtor's claim of exemption. In this case, Debtor's exemption came first and was followed several months later by the IRS's motion for relief from stay to set off.

---

[49] IRC § 6402(f), which emphasized the non-discretionary nature of the interception, provides, in pertinent part, as follows:

No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c), (d), or (e). No such reduction shall be subject to review by the Secretary in an administrative proceeding.

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 42 of 47

1    Finally, the facts of this case relating to Debtor's financial

2 position weigh heavily in favor of denying the IRS's claim of

3 setoff.  The Ninth Circuit has directed that setoff should not be

4 allowed when it would be inequitable or against public policy to do

5 so.  <u>FDIC v. Bank of America Nat'l Trust and Savings</u>, 701 F.2d at

6 836-37.[50]  The facts presented by this case do not show a debtor

7 trying "to take unfair advantage" of an adversary by using a claim

8 of exemption to defeat a setoff.  <u>Pieri</u>, 86 B.R. at 213.[51]  The

9 record shows a debtor who has absolutely nothing else but the tax

10 refunds in question to "provide him with the basic necessities of

_____

12    [50]  California state law has also protected exempt property
against claims of setoff when necessary to further state policy.

13 <u>See</u> <u>In re Ter Bush</u>, 273 B.R. 625, 631-32 (Bankr.S.D. Cal.

14 2002)(finding California state law supportive of "the proposition
that exempt property will be protected from setoff when an

15 important public policy regarding the rights of the debtor is
involved, regardless of the statutory language granting the

16 exemption."); <u>see</u> <u>also</u> <u>Birman v. Loeb</u>, 64 Cal.App.4th 502
(1998)(disallowing setoff of debt owed by debtor against non-

17 judicial foreclosure deficiency); <u>Barnhill v. Robert Saunders &
Co.</u>, 125 Cal.App.3d 1 (1981)(disallowing setoff of employee's

18 exempt wages against debts owed to employer); <u>Kruger v. Wells Fargo
Bank</u>, 11 Cal.3d 352 (1974)(disallowing setoff against debtor's bank

19 account containing funds derived from unemployment compensation and
disability benefits); <u>Williams v. Williams</u>, 8 Cal.App.3d 636

20 (1970)(disallowing setoff against alimony cr child support

21 payments).

22    [51]  <u>See</u> <u>also</u> <u>In re Winnett</u>, 97 B.R. 7 (Bankr. E.D. Cal.

23 1989)(finding attorneys had superior rights to funds held in an
attorney's trust account subject to a pre-petition fee dispute with

24 the debtors notwithstanding debtors' assignment of their rights to
disputed funds as a down payment for a new home and the subsequent

25 claim of homestead exemption as to such disputed funds upon then
filing bankruptcy); <u>In re Glaze</u>, 169 B.R. 956 (Bankr. D. Ariz.

26 1994)(allowing setoff of damages awarded by state court arising
from the forced sale of debtors' home even though debtors had

27 subsequently filed bankruptcy and asserted a homestead exemption as
to the proceeds in hopes of defeating the damages award).

life." H.R. Rep. No. 95-595 at 126. Debtor's schedules show a positive monthly cash flow of only $75, which Debtor has dedicated to payments under his confirmed Amended Plan. Debtor has virtually no assets, other than his tax refunds, and he has two dependent children. Allowing the IRS to set off the tax refunds would take from Debtor his wildcard exemption -- the most important exemption available to him as a nonhomeowner. This would be contrary to both the interest of bankruptcy policy and California state exemption policy.

There are factors weighing in the IRS's favor. Debtor owes pre-petition income taxes, both to the IRS and to the FTB.[52] Debtor failed to file tax returns for six consecutive years pre-petition. Finally, there is a presumption in favor of allowing setoffs in recognition of the long-standing common law right. In re Hal, 122 F.3d 851, 852 (9th Cir. 1997). However, that presumption does not withstand the countervailing equities weighing in the Debtor's favor, as discussed above, under the facts presented.

The Court notes that the IRS has argued that its setoff right gives it a secured claim under § 506(a) which provides:

> An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim . . . to the extent of the amount subject to setoff . . . and is an unsecured claim to the extent that . . . the amount so subject to setoff is less than the amount of such allowed claim.

Because the Court has determined that the equities weigh in favor of Debtor's exemption over the IRS's claim of setoff, § 506(a) is no longer applicable to the IRS's claim. The Court is denying the

_____

[52]  See footnote 25 supra.

Case: 05-50292   Doc# 54   Filed: 03/31/08   Entered: 04/01/08 15:04:15   Page 44 of 47

1  IRS's claim of setoff, not merely delaying it by treating it as a

2  secured claim under the Amended Plan.  To delay, rather than deny,

3  setoff would be to eviscerate the purpose of this Debtor's crucial

4  wild card exemption.

5      Finally, the Court notes that the IRS has suggested that the

6  Court only has the discretion to delay setoff rather than to deny it

7  entirely.  Specifically, the IRS has argued:

8      [D]enying relief from stay serves no conceivable purpose
       because the Court lacks jurisdiction to order a tax refund
9      and because Debtor is not entitled to have it turned over
       to him.  The tax overpayments will be permanently frozen
10     until the stay terminates or the statute of limitations
       for a refund claim expires.

11

12  IRS's Supp. Brief at 2:25-3:3.  This argument was soundly rejected

13  by the Ninth Circuit BAP in Cascade Roads, 34 F.3d at 765-66.

14  Further, this argument fails to recognize that it is the Court --

15  not the IRS -- that is charged with the duty of evaluating setoff

16  claims under § 553.  The caselaw is clear that it is within the

17  Court's discretion to grant or deny a motion for relief from stay to

18  allow a party to effectuate a setoff.  Cascade Roads, 34 F.3d at

19  763; FDIC v. Bank of America Nat'l Trust and Savings, 701 F.2d at

20  836-37.  The Court is not bound by the netting argument espoused by

21  the Fifth Circuit in Luongo, which is the only support for the IRS's

22  assertion that "Debtor is not entitled to have [the tax refund]

23  turned over to him."

24

25              IV.

26           CONCLUSION

27      For the reasons set forth in this Memorandum Decision, the

28  IRS's Motion is denied and the IRS is not permitted to offset

MEMORANDUM DECISION ON MOTION
FOR RELIEF FROM STAY BY IRS

45

Debtor's unpaid tax liabilities against the $6,852 owed to Debtor as tax refunds for 2002 and 2004. The Court denies the Motion on two separate bases: (1) Debtor's exemption of the tax refunds is no longer subject to challenge pursuant to <u>Taylor</u> and (2) the equities require that the IRS's setoff rights yield to Debtor's wildcard exemption on the facts of this case.

For the reasons stated above, the IRS is also not entitled to have a portion of its claim treated as a secured claim pursuant to § 506(a).

Because the Court has determined that the IRS is not entitled to set off, the IRS does not have a basis to retain the $6,852 owing to Debtor as tax refunds for 2002 and 2004. Therefore, the IRS shall promptly turn over these funds to Debtor.

Counsel for Debtor shall submit a proposed form of order after review by counsel for the IRS as to form.

Dated:

March 31, 2008

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

Case: 05-50292    Doc# 54    Filed: 03/31/08    Entered: 04/01/08 15:04:15    Page 46 of 47

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Court Service List

John W. Strate, Esq.
Special Assistant U.S. Attorney
55 S. Market Street, Suite 505
San Jose, CA   95113

David A. Boone, Esq.
Law Office of David A. Boone
1611 The Alameda
San Jose, CA   95126

Anthony S. Gould
872 Leigh Ave.
San Jose, CA   95128

Devin Derham-Burk
P.O. Box 50013
San Jose, CA   95150-0013

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004